WO

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Campbell, | ) |
| Plaintiff, | ) CV 04-78 TUC DCB |
| | ) |
| v. | ) |
| | ) **ORDER** |
| J. Chaves, et al., | ) |
| | ) |
| Defendants. | ) |

The Court denies the Motion to Dismiss (document 33) filed by Defendants' Hunt and Hardesty and stays this case for Plaintiff to exhaust administrative remedies. The Plaintiff's Motion for Summary Judgment (document 35) is denied.

## Background

On February 18, 2004, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed an action for damages pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)[1] for violation of his Fifth and Fourteenth Amendment rights because Defendants lost some of his property when he was transferred from one federal prison to another. The Complaint was dismissed with leave to amend because not all property losses implicate the Due Process Clause of the Constitution. Mere negligence does not amount to a constitutional deprivation. *Daniels v. Williams*, 474 U.S. 329, 331-332 (1986).

---

[1] *Bivens*, 403 U.S. at 397-98 (recognizing a right to recover monetary damages for injuries suffered as a result of a federal agent's violation of a Constitutional right; *Bivens* action is comparable to suit against state actor under 18 U.S.C. § 1983).

1   The Constitution requires some kind of a hearing before the State deprives a person
2   of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). When property
3   deprivations are effected through random and unauthorized conduct of a state employee, pre-
4   deprivation procedures are simply impracticable since the State cannot know when such a
5   deprivation will occur. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Even where a state
6   employee intentionally and without authorization deprives a person of his property, the
7   employee does not violate the Due Process Clause if a meaningful post-deprivation remedy
8   for the loss is available. *Id.*

9   On July 22, 2004, Plaintiff filed a First Amended Complaint, alleging that
10  Defendants' failure to follow prison regulations for transferring inmate property lead to the
11  theft of some of his personal property, and Defendants failed to provide any type of
12  administrative forum in which to bring or resolve his claims.

13  The following allegations charged in the Complaint are undisputed. From July 7,
14  2003, through April 15, 2004, Plaintiff was incarcerated at the Federal Correctional
15  Institution, Safford (Safford-FCI), Arizona.[2] Plaintiff was transferred to Safford-FCI from
16  Taft Correctional Institution (Taft-FCI), which is a government owned facility operated by
17  a government contractor, GEO Group, Inc. When he was transferred from Taft-FCI to
18  Safford-FCI, his personal property was packed at Taft-FCI and sent to Safford-FCI. When
19  it arrived at Safford-FCI, he was missing a pair of Nike athletic shoes, a pair of slippers, 20-
20  37 cent stamps and a towel. The total value of the missing items is $113.40.

21  The missing items had been inventoried at Taft-FCI as being sent. Defendant
22  Hardesty prepared an inventory sheet when he delivered the personal property to the Plaintiff
23  at Safford-FCI, which showed the items as not received by the Plaintiff. In other words,
24  there is no way to determine based on the two inventories whether the loss or theft occurred
25  at Taft-FCI or Safford-FCI. (Plaintiff's Motion for Summary Judgment (P's MSJ) at Ex. 2-4.)

26  _____

27  [2]Plaintiff is currently incarcerated at the Federal Prison Camp (FPC) Montgomery, Alabama.

28

On July 22, 2003, Plaintiff filed a Claim for Damage, Injury, or Death, an administrative procedure pursuant to 28 C.F.R. 543.30 *et seq*, for filing a tort claim under the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671, *et seq.* (P's MSJ at Ex. 5-6.)  This tort remedy is available to inmates to provide money damages for personal injury death and/or damage to or loss of property.  (Defendants' Motion to Dismiss (Ds' MD) at 3.)

On August 15, 2003, Defendants' Regional Counsel, U.S. Department of Justice, Federal Bureau of Prisons (BOP), denied his claim as follows:

> . . . You seek compensation in the amount of $113.40 for the alleged loss of personal property as a result of events at the Taft Correctional Institution, Taft, California, on or about June 25, 2003.  Your claim was received on August 4, 2003.
>
> Agencies of the United States may consider claims for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment. The term "federal agency" does not include any contractor with the United States.  Therefore, acts or omissions allegedly committed by contract staff at the Taft Correctional Institution cannot be considered under the provisions of the Federal Tort Claims Act.
>
> Accordingly, your claim to the Bureau of Prisons is denied.  *If you are not satisfied with this determination, you are afforded six months from the date of the mailing of this letter via certified mail within which to bring suit in the appropriate United States District Court.*

(P's MSJ at Ex. 12.)

On February 1, 2004, Plaintiff wrote, and on February 18, 2004, the Regional Director received, a request to reconsider his denial.  Plaintiff argued that BOP, as the contract administrator for TAFT-FCI, has responsibility to ensure compliance with BOP policies and federal laws.  Plaintiff charged that his transfer was controlled by BOP, and BOP procedures and forms were used to facilitate his transfer.  He explained that he had repeatedly written to Taft-FCI and their corporate headquarters, and he had not received any response.  He argued that BOP's oversight responsibilities for Safford were undisputed, and "[g]iven that the four items are in fact missing, an investigation should have been initiated

3

to determine what happened."  "I do not know exactly who the responsible party is, either Taft FCI or Safford FCI, but one of the two most definitely are because the property is missing."  (Ds' MD at Ex. C.)

On February 24, 2004, Defendants' Regional Counsel denied reconsideration of Plaintiff's request for "compensation for the alleged loss of personal property as a result of events at [Taft-FCI]."  He restated that the Plaintiff had no relief pursuant to the Federal Tort Claims Act because Taft-FCI was not a federal agency.  He concluded, "You have failed to present any new evidence or adequate or verifiable justification warranting a reconsideration of your claim.  Accordingly, your request for reconsideration is denied and you should consider our previous correspondence as the final determination in this matter."  (Ds' MD at Ex. D.)

The filing of Plaintiff's Complaint on February 18, 2004, followed the directive, which was that he had six months within which to bring suit in the appropriate United States District Court.

Plaintiff's First Amended Complaint was served on all Defendants by April 26, 2005. On June 2, 2005, Defendants Hardesty and Hunt filed a Motion to Dismiss.  On October 4, 2005, the parties stipulated to dismiss Defendants GEO Group, and its employees Chavez and Greason.  Defendant Andrews, also a GEO Group employee, has not filed an Answer and is subject to an entry of default against him.

**Defendants' Hunt and Hardesty's Motion to Dismiss**

### A.  Administrative Exhaustion

Defendants argue that this case is subject to dismissal for Plaintiff's failure to exhaust administrative remedies because he failed to file an administrative claim under 28 C.F.R. 542.10, which allows an inmate to seek formal review of an issue relating to "any aspect of his confinement."  While money damages are not usually available under this means of review, a claim like Plaintiff's may contain peripheral issues that can be resolved by

1  corrective actions available under the Administrative Remedy Program.  67 FR 50804 at 2,
2  August 6, 2002.

3  On April 24, 1996, Congress signed The Prison Litigation Reform Act (PLRA) into
4  law.  Pub. L. No. 104-134, 110 Stat. 1321 (1996).  Congress passed the PLRA in response
5  to what it considered an abuse of the judicial process by inmates.  *Id.* at 104-378.  Congress
6  designed the PLRA to make it more difficult for prisoners to take their complaints to federal
7  court.  The Act contains a host of provisions aimed at achieving this goal, but one of its most
8  important features is its exhaustion requirement.  MUSHLIN, MICHAEL B., RIGHTS OF
9  PRISONERS §16:9 (3rd ed. 2003).  Previous to the PLRA, exhaustion was discretionary.  The
10 PLRA made a 180-degree change, and now, all available remedies must be exhausted.  *Id.*:
11 28 U.S.C. § 1997e(a).  "Exhaustion means that in order to bring suit a prisoner 'has to make
12 use of whatever grievances procedures are available . . . in the prison system and take [the]
13 grievance all the way to the top by taking every appeal available . . .'" *Id.* (quoting *Porter*
14 *v. Nussle*, 534 U.S. 516 (2002)).

15 The BOP maintains a process for inmates to obtain assistance regarding concerns
16 they have about conditions of confinement, including staff, medical care, prison life, and
17 prison policies and procedures such as those complained of in Plaintiff's Amended
18 Complaint.  The BOP Administrative Remedy Program, 28 C.F.R. 542.10 *et seq.*, governed
19 by PS 1330.13, includes four levels of review.  See http//www.bop.gov.  At each of the first
20 three levels, if the inmate is not satisfied with the outcome or does not receive a response to
21 his inquiry within set time frames, he can appeal to the next level and ultimately to the fourth
22 level: the General Counsel.  The General Counsel's review constitutes exhaustion of the
23 grievance procedure.  28 C.F.R. 542.13, 542.15; PS 1330.13, CN 4 (8/13/2002), §§ 7,
24 8(c)(4), 9(a).

25 Plaintiff alleges that when his property was delivered without the alleged lost or
26 stolen items, he took step one by complaining to Defendant Hardesty and informally trying

27

28

1   to resolve the problem.  Plaintiff alleges that Defendant Hardesty did not attempt to

2   investigate the loss of the items or attempt to recover them, but he did tell the Plaintiff that

3   his avenue of recourse was to file a FTCA property claim.  Defendant Hardesty's directive

4   would have been in keeping with 28 C.F.R. 542.12(b) (2001), which provided: "Requests or

5   Appeals will not be accepted under the Administrative Remedy Program for claims for which

6   other administrative procedures have been established, including tort claims, . . . " 28 C.F.R.

7   542.12 (2001).  Safford-FCI staff provided the Plaintiff with the form for filing the FTCA

8   claim.  (P's MSJ, Statement of Facts (SOF) at ¶ 12-13.)

9       Section 542.12 was eliminated August 6, 2002, to allow the Administrative Remedy

10  Program to accept those matters previously excluded "to allow the Program to address more

11  quickly the full range of corrective actions available, including any that may be peripheral

12  to issues which have other statutorily-mandated administrative procedures in place."  PS

13  1330.13, CN 4 (8/13/2002), §§ 2; 67 FR 50804 at 1-2 (8/6/02).  Plaintiff filed his

14  administrative tort claim for monetary recovery under the FTCA on July 22, 2003.  At this

15  time, the Administrative Remedy Program was not available to the Plaintiff.

16      By the time Defendants denied the FTCA administrative claim, the regulations had

17  changed.  But when the BOP denied the claim for the lost or stolen items totaling $113.40,

18  the letter failed to inform the Plaintiff that he could file a claim under the Administrative

19  Remedy Program.  The Plaintiff sent another letter to BOP asking it to reconsider its

20  decision, reurging his claim and complaining that Safford-FCI had failed to investigate the

21  matter to determine what happened.  Instead of referring what was a procedural-operational

22  complaint to the Administrative Remedy Program, BOP ignored this aspect of his claim and

23  repeated its denial that he was not entitled to damages under the FTCA because Taft-FCI was

24  not a federal facility.  BOP failed to inform the Plaintiff that he could file a claim pursuant

25  to the Administrative Remedy Program or, alternatively, refer the complaint to the

26

27

28                                                    6

1    Administrative Remedy Coordinator, to provide the Plaintiff with the appropriate grievance

2    forms.  PS 1330.13, CN 4, at 5(a)(5).

3         Without deciding whether or not General Counsel wrongly or rightly denied the

4    Plaintiff's FTCA property loss claim because the loss was caused by an employee of a private

5    nonfederal corporate entity, the Court finds that given the change allowing property claims

6    to be filed with the Administrative Remedy Program, the BOP should have referred the

7    Plaintiff to the Administrative Remedy Program.  Instead, the BOP directed him to file the

8    action it now complains was filed prematurely.

9         Under these circumstances, procedural default for failure to exhaust administrative

10   claims is not warranted.  The Ninth Circuit Court of Appeals recently determined that the

11   exhaustion requirement in the PLRA, while mandatory, is not a procedural default.  *Ngo v.*

12   *Woodford*, 403 F.3d 620, 626-631 (9th Cir. Cal.), *cert. granted*, (2005).

13        In *Ngo*, the court explained why it rejects case law of the third, seventh, and tenth

14   circuits, that find procedural default in cases where prisoners fail to exhaust administrative

15   grievance procedures.  The court concluded that these circuits applied the exhaustion

16   doctrine to the PLRA in fear that prisoners would purposely avoid administrative deadlines

17   as a means of circumventing the prison's grievance system and going straight to court.  *Id.*

18   at 626-629.  The court, however, found that this would be foolish because prison grievance

19   systems "offer prisoners the fastest[3] route to a remedy," and often may be the most effective,

20   or only, remedy available, especially for claims that do not involve constitutional issues.  *Id.*

21   at 629.

22        After analyzing the language in the PLRA, the court concluded that the Act did not

23   mention procedural default.  *Id.* at 628.  "In fact, the language of § 1997e(a) strongly suggests

24

25        [3]This Court notes that this logic is totally undermined if inmate grievance systems become
26   a series of stalling tactics, and dead-ends without resolution.  Further, such grievance systems defeat
     Congress' intent when it adopted the exhaustion provision in the PLRA "to reduce the quantity and
27   improve the quality of prisoner suits."  *Ngo*, 2005 WL 674707 at *9 (citing *Porter*, 534 U.S. at 524.

28                                              7

that an exhaustion requirement defers, not bars, a federal suit: inmates may not sue "'*until such administrative remedies as are available are exhausted.*'"  *Id.* (citing 42 U.S.C. § 1997e(a)) (emphasis added).

*Ngo* involved dismissal by a district court of a prisoner's civil rights complaint as procedurally defaulted at the administrative level because the prisoner failed to meet the short filing deadlines that apply to inmate grievances.  In *Ngo,* there were no administrative remedies available to the prisoner because his administrative avenues were foreclosed by his late filed grievance, and so the court held that he had exhausted "such administrative remedies as were available," and reversed and remanded the case to the district court to decide the merits of the case.  The court did not determine whether the prison appeals coordinator properly determined that the prisoner's administrative claim was untimely.  *Id.* at 631 n. 5.

This Court finds that the comments of the Ninth Circuit Court of Appeals in *Ngo* merit repeating here:

> Procedural default is not an inextricable element of the PLRA's exhaustion requirement. If it were, prisoners' access to courts would be based on their ability to navigate procedural minefields, not on whether their claims had any merit. Moreover, prison administrators should not be given an incentive to fashion grievance procedures which prevent or even defeat prisoners' meritorious claims.

*Id.* at 631.  These words are especially poignant here, given this Court's finding that the administrative procedures were structured and operated by Defendants in a manner that prevented the Plaintiff from pursuing his case through the Administrative Remedy Program. This case shows the wisdom of the Ninth Circuit's reasoning that there is no need to convert a rule governing the timing of lawsuits into one that bars them entirely.  *Id.*

The court in *Ngo*, found that the plaintiff had "exhausted all administrative remedies available to him as required by the PLRA when he completed all avenues of administrative review available to him: "His administrative appeal was deemed time-barred and no further

level of appeal remained in the state prison's internal appeals process." *Id.* This Court cannot, however, find the same for the Plaintiff in this case.

"To demonstrate a failure to exhaust, defendants must specify which remedies remain available . . .." *Id.* at 626. This Court finds that there might very well be some administrative remedy or remedies available to the Plaintiff.

Plaintiff's First Amended Complaint, alleges that Defendants' failure to follow prison regulations for transferring inmate property lead to the theft of some of his personal property, and Defendants failed to provide any type of administrative forum and procedures for bringing or resolving his claims.

The former charge entitles him to $113.40,[4] should he prevail on his tort claim for the lost property, pursuant to the FTCA. This claim was administratively exhausted as of August 15, 2003, (P's MSJ at Ex. 12), when Defendants' Regional Counsel denied Plaintiff's request for reconsider on February 24, 2004. (Ds' MD at Ex. D.) 28 C.F.R. § 543.32(g); PS 1320.06(g).

It is the latter charge that rises to the level of a constitutional violation. Plaintiff is reminded that his initial Complaint was dismissed because not all property losses implicate the Due Process Clause of the Constitution. Mere negligence does not amount to a constitutional deprivation. *Daniels v. Williams*, 474 U.S. 329, 331-332 (1986). Additionally, when property deprivations are effected through random and unauthorized conduct of a state employee, even where the employee intentionally and without authorization deprives a person of his property, the employee does not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

---

[4]Arguably, Plaintiff is also entitled to the cost of this litigation because it is an expense related to the recovery of the $113.40.

9

The Administrative Remedy Program, as amended in 2002 to omit section 542.12, which excluded tort claims, provides an administrative forum in which to bring and possibly resolve his claims. This forum is available to Plaintiff to address his claims, but whether or not there is a procedure available to him to resolve his tort claim for the lost property remains to be seen. This Court can not imagine that there does not exist a procedure to resolve property losses that occur when prisoners are transferred from one facility to another, including transfers from contract facilities.[5] For example, in the state system the following provisions exist:

> 1.3 Inmate grievances alleging property losses or damages during transfer shall be investigated and fully administered by the Grievance Coordinator of the facility where the inmate files the grievance.
>
> 1.3.1 The Warden or Deputy Warden at the gaining Institution/Unit shall provide a response to the inmate, on the Inmate Request/Response-Request for Review form within ten workdays of receipt of the complaint. All efforts to resolve the grievance shall be documented in the response to the inmate, including the basis for any decision.

DO 802.14 at www.adc.state.az.us. Defendants have been silent regarding the existence of any federal equivalent. The record should be properly developed during administrative review.

Since *Ngo*, the Ninth Circuit Court of Appeals issued another case involving administrative exhaustion and section 1983 cases, *Lira v. Herrera*, 2005 WL 2850115 (9th Cir. November 1, 2005). The court addressed the proper approach to take when a prisoner files a complaint that contains mixed claims, some exhausted and some not. Noting the general rule that section 1997e(a) of the PLRA "demands dismissal of cases in which there

---

[5]See e.g.: Statement of Work (SOW), Community Corrections Center (CCC), August 2002) at Introduction ¶ 6 (requiring all services and programs to comply with the SOW, the United States Constitution, all applicable federal, state and local laws and regulations; applicable Presidential Executive Order (E.O.); all applicable case law; and Court Orders) and Chapter 12: Administrative Remedy Program (requiring the contractor to comply with the most recent version of BOP program statement for Administrative Remedy Program).

10

was no 'presuit exhaustion,'" *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002), the court in *Lira* held that when a mixed complaint includes exhausted and unexhausted claims that are closely related and difficult to untangle, dismissal of the defective complaint with leave to amend to allege only the fully exhausted claim is the proper approach. *Lira*, 2005 WL 2850115 at * 11. Echoing the court in *Ngo* that the analogy to habeas cases has limited applicability in the PLRA context, the court nevertheless looked to the Supreme Court's decision in the habeas case, *Rose v. Lundy*, 455 U.S. 509 (1982), which held that dismissal should be with leave to amend to allow the petitioner to delete unexhausted claims rather than returning to state court to exhaust all claims. The court explained that this exception to *McKinney* was required because a total exhaustion-dismissal rule would not advance the primary policy goals of the PLRA: "'to reduce the quantity and improve the quality of prisoner suits," by filtering out frivolous claims, satisfying some grievances, and developing an administrative record for use in cases that do go forward. *Lira*, 2005 WL 2850115 at * 11 (quoting *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002)).

In *Rhines v. Weber*, 125 S.Ct. 1528, 1535 (2005), the Supreme Court clarified the procedure for mixed habeas petitions. The Supreme Court held that the district court may stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust all of his claims if the Court finds: good cause for the failure to exhaust, that the claims are not plainly meritless, and that the petitioner did not engage in dilatory tactics. *Id.* Such a finding would of course provide a basis for allowing an extension to the deadline for filing a claim in the Administrative Remedy Program, which is "20 calendar days following the date on which the basis for the request occurred." PS 1330.13 at 8(a) and (b). The Supreme Court offered the sound advise that courts should also require a petitioner to seek to exhaust their state claims within specified time limits. *Id.*

Given the circumstances of this case, this Court finds that it should be stayed and held in abeyance because Plaintiff had good cause for his failure to exhaust, the claims are

not plainly meritless, and the Plaintiff did not engage in dilatory tactics.  The case shall be stayed pending remand to the Warden at Safford-FCI for administrative review and for an administrative decision *on the merits*.  In light of Taft-FCI's offer to reimburse Plaintiff for the missing property, this Court anticipates that this matter can be resolved administratively assuming that there are procedures in place to resolve property losses that occur when prisoners are transferred from one facility to another, including transfers from private contract facilities, like Taft-FCI.

Upon remand, the Plaintiff shall process his case as a formal claim, pursuant to PS 1330.13 *et seq.*; 28 C.F.R. 542.10 *et seq.*, for the Administrative Remedy Program.  His claims shall be addressed, and granted or denied, within the specified time frames and in accordance with the procedures contained in these provisions.  The Plaintiff's grievance shall be handled expeditiously, without any extensions to the specified time limits.  All deadlines and time-frames shall be complied with, except that Plaintiff shall have 20 days, upon receipt of the proper form, to submit his request to initiate the formal resolution of this matter.

In the event the matter is resolved, the Plaintiff shall file a notice with this Court within 10 days of the final decision.

In the event the matter cannot be administratively resolved by the parties, the Plaintiff may return to this Court for a decision regarding the merits of his lost property claim for $113.40, plus the cost of this litigation, and his claim that Defendants fail to provide procedures and a forum for prisoner's like himself to resolve lost property claims.  In the event the matter is not administratively resolved, the Plaintiff shall file a notice with this Court within 10 days of the final decision.

The Court finds that there are material issues of fact in dispute as to whether staff at Taft-FCI or Safford-FCI was responsible for the lost property, therefore, the Court will not dismiss Defendant Hardesty from this action.  Because Plaintiff's Complaint involves a challenge to prison policy, procedure, and operations, therefore,  the Court shall not dismiss

Defendants Hunt, Warden at Safford-FCI, and Andrews, Community Corrections Manager at Taft-FCI.  Defendant Andrews failed to file an Answer and is subject to default.  In the event this case returns to this Court, Defendant Andrews shall have 10 days to file a memorandum showing cause why default should not be entered against him for failing to Answer the Plaintiff's First Amended Complaint.  Defendants shall have 10 days to file an Answer, Fed. R. Civ. P. 12(a)(4), and the case shall be set for a scheduling conference.

**Accordingly,**

**IT IS ORDERED** that the Defendants' Motion to Dismiss (document 33) is DENIED.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment (document 35) is DENIED.

**IT IS FURTHER ORDERED** that this case is stayed pending Plaintiff's exhaustion of remedies available pursuant to the Administrative Remedy Program, as evidenced by a final decision.

**IT IS FURTHER ORDERED** *that the parties shall comply with the directives contained in the paragraphs above in the body of this Order regarding the expeditious disposition of Plaintiff's administrative grievance.*  All deadlines and time-frames set out in the Administrative Remedy Program shall be complied with, except that Plaintiff shall have 20 days upon receipt of the proper form, to submit his request to initiate formal resolution of this matter.  In the event administrative review includes full review to a final decision issued by General Counsel, review shall be completed within approximately 5 months or by June 1, 2006.

**IT IS FURTHER ORDERED** that Defendants shall file a status report with this Court every 30 days, with the first report due on December 30, 2005.

**IT IS FURTHER ORDERED** that the Plaintiff shall file a Notice with this Court within 10 days of a final decision, informing the Court as to whether the case has been

13

administratively resolved or whether the Court must lift the stay and return this matter to its pending case docket.

        **IT IS FURTHER ORDERED** that in the event the stay is lifted and this case is returned to this Court's active docket, an Answer shall be filed within 10 days of the lifting of the stay, and a scheduling Order shall issue forthwith setting an expedited case management schedule.

        **IT IS FURTHER ORDERED** that in the event the stay is lifted and this case is returned to the Court's active docket, Defendant Andrews shall file a memorandum within 10 days of the lifting of the stay, to show good cause why default shall not be entered against him for his failure to Answer.

        DATED this 28th day of November, 2005.




David C. Bury
United States District Judge